<u>NOT FOR PUBLICATION</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRUCE M. SKOORKA,<br><br>    *Plaintiff*,<br><br>v.<br><br>KEAN UNIVERSITY, *et al.*,<br><br>    *Defendants*. | Civil Action No. 09-3428<br><br><u>OPINION</u> |

**PADIN, District Judge.**

Pending before the Court is the motion for summary judgment filed by the only remaining Defendants in this matter, Kean University, the Board of Trustees of Kean University, and the State of New Jersey (collectively, the "Kean Defendants"), seeking dismissal of what now remains of *pro se* Plaintiff Bruce M. Skoorka's Title VII retaliation claim. D.E. 273. Skoorka opposes the motion. D.E. 295. The Court has reviewed the parties' submissions and decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78.1(b). For the following reasons, the Kean Defendants' motion is **GRANTED**.

**I.    BACKGROUND**

The facts underlying this litigation have already been extensively detailed in Judge McNulty's June 2, 2015 and June 30, 2017 opinions. D.E.s 130 and 171. Those two decisions are hereby incorporated by reference. The Court will now set forth those facts that are germane to the present motion.

Skoorka is a former economics professor at Kean University who, over the course of his employment, "frequently complained of discrimination and alleged other illegal or wrongful

conduct by persons affiliated with Kean." D.E. 130 at 1. On July 9, 2009, Skoorka filed his original complaint in this matter. D.E. 1. On June 2, 2015, Judge McNulty entered summary judgment dismissing substantially all claims asserted in Skoorka's 2009 complaint against most of the defendants named therein. See D.E.s 130, 131. As a result, Skoorka's sole remaining claim in this matter is a Title VII retaliation claim against the Kean Defendants, that is further limited to three specific occurrences, detailed *infra*.

### A. Establishing a *Prima Facie* Title VII Retaliation Claim

As noted by Judge McNulty in his 2015 summary judgment opinion, "[t]o make out a *prima facie* case of retaliation under Title VII, Skoorka must establish that 1) he engaged in an activity protected by Title VII; 2) his employer took an adverse employment action against him; and 3) there was a causal connection between his participation in the protected activity and the adverse employment action." D.E. 130 at 33 (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006), *as amended* (Sept. 13, 2006)).

### B. Skoorka's Title VII-Protected Activities

Judge McNulty pointed to two specific activities which Skoorka engaged in that are protected by Title VII. First, in November of 2001, Skoorka brought a state court action in which he alleged, *inter alia*, that Kean University and a number of individuals affiliated with Kean discriminated against him on the basis of his religion, retaliated against him for reporting discriminatory and other illegal conduct, and violated his rights under the First Amendment and the Equal Protection Clause. D.E. 130 at 3. "That suit took some ten years, two jury trials, and at least two written opinions from the Appellate Division to fully resolve itself." *Id.* "In the end, Skoorka was unsuccessful on all counts of his [2001] complaint." *Id.* at 4.

2

Second, "[o]n July 24, 2006, Skoorka filed a charge of discrimination with the [Equal Employment Opportunity Commission ("EEOC")]." *Id.* "He alleged that the defendants were continuing to discriminate against him on the basis of his religion, and that they were retaliating against him for voicing grievances and filing his state court lawsuit." *Id.* (citing D.E. 123-5, Ex. 1). Skoorka notified Kean of his EEOC filing on that same day. *See* D.E. 273-1 at ¶ 48.

### C. The Adverse Actions Supporting Skoorka's *Prima Facie* Title VII Claim

Judge McNulty's 2015 summary judgment ruling identified "three essential allegations" that could arguably qualify as adverse employment actions under Title VII: (i) the Kean Defendants' purported interference with Skoorka's teaching schedule in 2006; (ii) the deprivation to Skoorka of basic office equipment and supplies; and (iii) Skoorka's allegation that Kean University's former faculty chair, William Kempey, made disruptive visits to Skoorka's classroom. D.E. 171 at 3. Judge McNulty provided the following additional insight as to why each of these allegations supported a *prima facie* Title VII discrimination claim.

> Skoorka alleges that in 2006, Kean changed his schedule to create a conflict with his Thursday class at NYU. Kempey, the department chair, did so immediately after Skoorka notified Kean of his NYU schedule, and not long after Skoorka filed an EEOC complaint. That interference with outside employment, however fleeting, could have dissuaded a reasonable person from complaining of discrimination. That is enough to raise a triable issue as to retaliation. To be clear, only Skoorka's claim of retaliation with respect to this specific 2006 incident survives summary judgment. Skoorka's other claims of scheduling shenanigans do not.
>
> Skoorka also alleges that his employer has deprived him of basic office equipment and supplies. That, too, alone or in combination with the other acts, might warn off a reasonable employee who was considering filing a discrimination complaint. Because Skoorka has testified that he is the only professor who was denied these basic tools, and because the Kean defendants have not submitted contrary evidence, a fact finder could infer that this constituted retaliation.

3

> Finally, Skoorka testified that defendant Kempey has interrupted Skoorka's classes and yelled at him in front of students. Skoorka has testified to the volume, but not the content, of Kempey's statements, leaving open the possibility that the parties were arguing about something wholly unrelated. But given the other acts, and the history of complaints and litigation, I find that a fact finder could connect the alleged tirades to retaliation. This conduct could be serious enough to dissuade a reasonable person from engaging in protected activity.

D.E. 130 at 34-35 (internal references omitted).

As noted, the above-three Title VII allegations are the only claims that survived the Kean Defendants' first summary judgment motion. Critically, Judge McNulty's denial of summary judgment was based only on the first step of the *McDonnell Douglas* analysis, *i.e.*, whether Skoorka presented a *prima facie* claim of Title VII discrimination. *See* D.E. 130 at 7-8 ("Here, the defendants have not offered a second-step showing of a legitimate, non-discriminatory reason for the actions Skoorka alleges. Rather, they argue that Skoorka's claim fail at the first step: he has not made out a *prima facie* case of discrimination.").

### D. Skoorka's Amended Pleading

On April 22, 2016, Skoorka filed a Supplemental and Amended Complaint in this matter. D.E. 145. On June 30, 2017, Judge McNulty addressed two separate motions to dismiss that pleading. D.E.s 171, 172. Judge McNulty, by way of that ruling, granted the motions to dismiss, except that he permitted Skoorka to add two paragraphs from his Amended Complaint to his Title VII retaliation claim of "deprivation of office equipment and supplies." D.E. 171 at 17. The two paragraphs added to the 2009 complaint are:

> 54. On or about March 6, 2013, Plaintiff sent an email to Ms. Mahon stating "I have no computer or access to the system . . . ."
>
> 55. In or about July 2014, Defendants, by Dr. Fulop, advised Plaintiff that a monitor had been obtained for his use. However, he still did not have a functional desktop computer.

4

### E. Developments Subsequent to Judge McNulty's 2017 Decision

The Kean Defendants and Skoorka thereafter engaged in additional discovery. On May 9, 2022, the Kean Defendants filed their second summary judgment motion in this matter; it is this motion that is presently before the Court. D.E. 273. Included with that motion are, *inter alia*, the May 2, 2022 certification of William Kempey, D.E. 273-3, and the May 5, 2022 certification of Elaine Mahon, former secretary of Kean University's Economics Department. D.E. 273-10. Skoorka filed his opposition to that motion on August 23, 2022. D.E. 295. The Kean Defendants filed their reply on September 3, 2022. D.E. 296.

On October 25, 2022, the Court ordered that the parties submit supplemental briefing "which speaks to all three steps of the *McDonnell Douglas* analysis." D.E. 297. The Kean Defendants submitted supplemental briefing on November 23, 2022. D.E. 302. Skoorka submitted his supplemental opposition on January 23, 2023. D.E. 307. And the Kean Defendants submitted a supplemental reply brief on January 31, 2023. D.E. 308. The Kean Defendants' summary judgment motion is now ready for decision.

## II. LEGAL STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving

party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). In other words, a court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

**III.   ANALYSIS**

Under Title VII, it is unlawful for an employer "to discriminate against any of his employees . . . because he has made a charge, testified, assisted or participated in any manner in

party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). In other words, a court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

**III.   ANALYSIS**

Under Title VII, it is unlawful for an employer "to discriminate against any of his employees . . . because he has made a charge, testified, assisted or participated in any manner in

an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Where, as here, a plaintiff does not present direct evidence of discrimination, courts apply the three-step, burden-shifting standard set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

At the first step, a plaintiff must establish a *prima facie* case of retaliation. To do so, a plaintiff must show that "(1) [he] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [him]; and (3) there was a causal connection between [his] participation in the protected activity and the adverse employment action." *Moore*, 461 F.3d at 340-41 (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)). To establish a causal connection, a plaintiff "must produce evidence 'sufficient to raise the inference that her protected activity was the *likely reason* for the adverse employment action.'" *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 259 (3d Cir. 2017) (quoting *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)) (emphasis in original). A court may consider a "broad array of evidence" to find a causal link. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000). "Unusually suggestive" temporal proximity between the protected activity and adverse action may be "sufficient standing alone to create an inference of causality and defeat summary judgment." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (citations omitted). Otherwise, a court considers "whether the proffered evidence, looked at as a whole, may suffice to raise the inference." *Id.* at 232 (internal citation omitted). Evidence may include an "intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for [the adverse action], or any other evidence in the record sufficient to support the inference of retaliatory animus." *Id.* at 232-33

If a plaintiff puts forth a *prima facie* case, "the burden shifts to the employer to provide a legitimate non-retaliatory reason for its conduct." *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d

7

249, 257 (3d Cir. 2017). An employer can satisfy its burden of production at the second step by providing evidence that "advance[es] a legitimate, non-retaliatory reason for its conduct." *Moore*, 461 F.3d at 342 (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500-01 (3d Cir. 1997)).

Finally, at the third step, a plaintiff must "convince the factfinder both that the employer's proffered non-retaliatory explanation was false [that is, a pretext], and that retaliatory animus was the 'real reason for the adverse employment action.'" *Carvalho-Grevious*, 851 F.3d at 258 (quoting *Moore*, 461 F.3d at 342). In other words, a plaintiff must prove, by a preponderance of the evidence, that the harm would not have occurred but-for the protected activity. *Id.* at 258. A plaintiff can do this by "demonstrat[ing] weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions from which a reasonable juror could conclude that the Defendants' explanation is unworthy of credence, and hence infer that the employer did not act for the asserted nonretaliatory reasons." *Carvalho-Grevious*, 851 F.3d at 262 (quoting *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015)) (internal quotation marks and brackets omitted).

Two additional points about the Court's analysis must be noted. First, in "[a]pplying *McDonnell Douglas* to Title VII retaliation claims, . . . '[a]lthough the burden of production of evidence shifts back and forth, the plaintiff has the ultimate burden of persuasion at all times.'" *Carvalho-Grevious*, 851 F.3d at 257. Second,

> Title VII . . . does not set forth a general civility code for the American workplace. An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience. The antiretaliation provision seeks to prevent employer interference with unfettered access to Title VII's remedial mechanisms. It does so by prohibiting employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers. And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence.

8

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal citations and quotations omitted).

As noted, Judge McNulty previously ruled that Skoorka has made out a *prima facie* claim of Title VII retaliation with respect to his claims that: (i) the Kean Defendants' purportedly interfered with Skoorka's teaching schedule in 2006; (ii) the Kean Defendants deprived Skoorka of basic office equipment and supplies; and (iii) Kean University's former faculty chair, William Kempey, made disruptive visits to Skoorka's classroom. The Kean Defendants now move for summary judgment on all three claims.

### A. The Court Is Not Bound by Judge McNulty's Prior Rulings

Skoorka devotes a significant portion of his opposition arguing that the Kean Defendants' present summary judgment motion must be denied because Judge McNulty previously denied summary judgment on the three remaining Title VII allegations, and that earlier decision is now the law of the case. *See*, *generally*, D.E. 295. The Court cannot agree.

First, Judge McNulty's prior summary judgment decision was based on his analysis of the first step of *McDonnell Douglas* only, on the record available to him in 2015. *See* D.E. 130 at 7-8 ("Here, the defendants have not offered a second-step showing of a legitimate, non-discriminatory reason for the actions Skoorka alleges. Rather, they argue that Skoorka's claim fail at the first step: he has not made out a *prima facie* case of discrimination."). The Court's present analysis, however, is not so limited. Indeed, the parties engaged in additional discovery *after* Judge McNulty's 2015 decision and have presented additional evidence that was unavailable eight years ago. The parties have also now submitted briefing which, for the first time, expressly speaks to the merits of Skoorka's remaining Title VII claims under all three steps of *McDonnell Douglas*.

9

The Court, moreover, remains free to revisit its earlier summary judgment ruling *sua sponte* because it has not yet entered final judgment divesting it of jurisdiction to reconsider the issue. *DeFranco v. Wolfe*, 387 F. App'x 147, 155 (3d Cir. 2010); *see also Escanio v. United Parcel Serv.*, 538 F. App'x 195, 199 (3d Cir. 2013) (judge may revisit earlier interlocutory denial of summary judgment). The Court now turns its attention to each of Skoorka's three remaining Title VII allegations.

### B. Skoorka's 2006 Teaching Schedule

It is undisputed that Skoorka taught one course at New York University ("NYU") in each year from 2005 through 2014. D.E. 273-1 (the "Kean Defs.' SOMF") ¶ 44. It is the issue of the Kean Defendants' alleged interference with Skoorka's NYU teaching schedule in 2006, and that year alone, that remains pending before the Court. The undisputed timeline of relevant events was summarized by Judge McNulty as follows:

> On February 7, 2006, Kean scheduled Dr. Skoorka to teach a Tuesday evening course during the upcoming Fall 2006 semester. (123-6, Exh. 7, 1911). On February 11, 2006, Skoorka notified the University that a Tuesday class would interfere with a course he teaches at NYU. *Id.* [Kean] responded in writing: "[I]n order to accommodate your desire not to teach on Tuesday nights, I write to ask if you would prefer to teach on Thursday night or a double period day time course on Friday. . . . Please advise me ASAP as to your decision. If I do not hear from you by Friday, March 10, 2006, your previously assigned schedule will stand." *Id.* at 1915. There is no evidence that Skoorka ever responded to this message.
>
> On July 24, 2006, however, Skoorka notified the University that he had filed a charge of discrimination with the EEOC. (123-6, Exh. 7, 667). On July 25, 2006, [Kean] notified Skoorka that it had cancelled his Tuesday night course because of low enrollment. *Id.* at 1921. On July 25, 2006, Skoorka advised [Kean] that he had moved his Tuesday night class at NYU to Thursday night in order to accommodate his teaching schedule at Kean. *Id.* at 660. On August 28, 2006, [Kean] notified Skoorka that it was changing his schedule to assign him a course on Thursday evenings. *Id.* at 1925-26. That rescheduling by Kean would have created a conflict with

10

>   the NYU course that Skoorka recently had moved to Thursday. On September 6, 2006, however, [Kean] again rescheduled the Thursday night course, moving it to Wednesday night. *Id.* at 785.

D.E. 130 at 29-30.

Judge McNulty concluded that the entry of summary judgment on this portion of Skoorka's Title VII retaliation claim was inappropriate because, "[f]rom the temporal proximity, it is possible to infer that Kean was retaliating, or sending a message, when it rescheduled the Tuesday class to Thursday [on August 28, 2006]." *Id.* at 30. Judge McNulty found this created "an issue of fact as to whether this was intended as retaliation." *Id.* He did so notwithstanding that the record undisputedly shows that "eight days later[, on September 6, 2006,] Kean relented and again rescheduled the Thursday class to Wednesday, resolving the conflict." *Id.* In other words, and as Judge McNulty recognized, "Kean quickly altered Skoorka's schedule to accommodate his NYU course[, and thus,] the scheduling conflict did not even exist except for a brief eight-day interregnum." *Id.*

To be clear, Judge McNulty denied summary judgment on this portion of Skoorka's Title VII claim solely on the basis of the temporal proximity between Skoorka's engagement in a protected activity, *i.e.*, his July 24, 2006 EEOC filing, and the scheduling conflict that Skoorka faced for an eight-day period between August 28, 2006 and September 6, 2006.

Skoorka, since Judge McNulty's 2015 decision, has not introduced any new evidence which further bolsters the proposition that the Kean Defendants intentionally interfered with his teaching schedule for an eight-day period in retaliation for Skoorka filing an EEOC complaint on July 24, 2006. The Kean Defendants, on the other hand, have proffered a certification from former Economic Chair William Kempsey which flatly denies that Kempsey, or any other member Kean University, intentionally interfered with Skoorka's teaching schedule. D.E. 273-3 ¶ 7. Moreover,

11

it is undisputed that Skoorka did in fact teach a course at NYU in 2006, and thus, that the Kean Defendants ultimately accommodated Skoorka's scheduling needs. Kean Defs.' SOMF ¶ 44.

In light of these considerations, the Court finds that Skoorka has, contrary to Judge McNulty's prior ruling, failed to establish a *prima facie* claim of Title VII retaliation based on the Kean Defendants' purported interference with his teaching schedule in 2006. The Court first finds that the "brief eight-day interregnum" scheduling conflict noted by Judge McNulty does not constitute an adverse employment action giving rise to a Title VII retaliation claim. *See H&R Block E. Enterprises, Inc. v. Dail*, No. 1:05-CV-1262-RBP, 2005 WL 8158052, at *12 (N.D. Ala. Sept. 22, 2005) (professor's claim that she was assigned to teach classes on three different campuses during one semester was not adverse employment action supporting Title VII retaliation claim, and even if it were, the record also showed that professor's scheduling issue was promptly revised so that she ultimately taught classes on two different campuses); *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011) (holding that changes to plaintiff's work schedule that ultimately reflected plaintiff's requested scheduling needs was not a materially adverse employment action supporting his Title VII retaliation claim); *Parsons v. Wynne*, 221 F. App'x 197, 198 (4th Cir. 2007) (plaintiff unable to establish *prima facie* case of retaliation based on reassignment/imposition of alternative work schedule).

Moreover, the broader record shows that Skoorka's eight-day period of scheduling uncertainty was part of a larger back-and-forth between Skoorka and Kean that began in February. That Kean made every effort to accommodate Skoorka's teaching schedule is evidenced by the fact that Skoorka did in fact teach a course at NYU in 2006, and in every other year from 2005 to 2014. Indeed, the undisputed facts of record suggest that Kean acted promptly and diligently in response to – and ultimately did – accommodate Skoorka's scheduling needs in 2006. And "[a]

12

proposed action that is corrected as soon as the proper official is made aware of it and before it goes into effect, so that the employee does not actually suffer any consequence, is not 'adverse.'" *Lamothe v. Bal Harbour 101 Condo. Ass'n, Inc.*, 316 F. App'x 844, 846 (11th Cir. 2008) (citation omitted).

The Court also finds that even if Skoorka's eight-day period of scheduling uncertainty constituted an adverse employment action, Skoorka has failed to meet his additional *prima facie* burden of establishing a causal connection between his participation in a protected activity and that adverse employment action. *Moore*, 461 F.3d at 340-41 (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)). In that regard, Skoorka "must produce evidence 'sufficient to raise the inference that [his] protected activity was the *likely reason* for the adverse employment action.'" *Carvalho-Grevious*, 851 F.3d at 259. Here, the only "evidence" presented by Skoorka is temporal proximity: he filed an EEOC complaint on July 24, 2006, and then, about one-month later, he was stuck in scheduling limbo for an eight-day period. *See* Kean Defs.' SOMF ¶ 55 ("As in the case of all other incidents where I made complaints or went to court, filed motions and so on, subsequent to that something nasty happened." (quoting Skoorka's Feb. 4, 2014 Dep. Tr.)). In light of the additional factual considerations detailed above, Skoorka's efforts to demonstrate causation *solely* on the basis of temporal proximity are insufficient. *See Rumanek v. Indep. Sch. Mgmt., Inc.*, 50 F. Supp. 3d 571, 579 (D. Del. 2014) ("temporal proximity alone is not always sufficient" to "satisfy the causal link element of a *prima facie* retaliation claim") (citation omitted); *Kachmar v. SunGard Data Sys.*, 109 F.3d 173, 178 (3d Cir. 1997) ("It is important to emphasize that it is causation, not temporal proximity, that is an element of plaintiff's *prima facie* case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn."). Skoorka fails to present evidence which demonstrates that the *likely* reason he endured an eight-

day period of scheduling uncertainty beginning on August 28, 2006 was because he filed an EEOC complaint on July 24, 2006.  *See Fennell v. Comcast Cable Commc'ns Mgmt., LLC*, --- F. Supp. 3d ---, No. CV 19-4750, 2022 WL 4296690, at *24 (E.D. Pa. Sept. 16, 2022) (granting summary judgment on plaintiff's Title VII retaliation claims because "Plaintiff has failed to link them to a retaliatory animus.  The sole fact that these incidents all occurred following the December 2017 complaint is not enough to establish retaliatory animus.").  In light of the foregoing considerations, the Court will enter summary judgment on the "2006 scheduling issues" portion of Skoorka's Title VII claim.

### C.  Deprivation of Office Equipment

In his 2009 complaint, Skoorka alleged that the Kean Defendants refused to provide him with basic office supplies, including an on-campus computer, paper, pens, and chalk.  D.E. 130 at 30-31.  He also alleged that he was deprived of access to a printer or photocopier.  *Id.*  Skoorka subsequently amended his complaint to specifically allege: (1) that he emailed former Kean secretary, Elaine Mahon, on March 6, 2013 to complain about his lack of computer access; and (2) that as of July 2014, he received a computer monitor, but still lacked a functional desktop.

In his 2015 summary judgment ruling, Judge McNulty found that Skoorka's allegations "that [Kean] has deprived him of basic office equipment and supplies" supported a *prima facie* Title VII retaliation claim because this deprivation "might warn off a reasonable employee who was considering filing a discrimination complaint."  D.E. 130 at 35.  Judge McNulty tempered this finding by noting that it was based solely on Skoorka's then-uncontroverted testimony that he was "the only professor who was denied these basic tools."  *Id.*

The Kean Defendants, in support of their present summary judgment motion, have now "submitted contrary evidence."  *Id.*  This new evidence includes a May 5, 2022 certification from

14

Elaine Mahon, who, during her time at Kean, was responsible for "distribut[ing] office and teaching supplies to faculty of the Economics Department," including Skoorka.  D.E. 273-10 at ¶ 1.  Mahon notes that office and teaching supplies were kept in a locked room, that she had a key to that room, and that when faculty members, including Skoorka, requested supplies, she would provide them, so long as they were available.  *Id.* ¶¶ 2-5.  She expressly denies ever treating Skoorka differently from other faculty members with regards to distribution of office supplies.  *Id.* ¶¶ 4, 6.

Mahon also notes that she observed computer equipment in Skoorka's office between 2011/2012 and 2017.  *Id.* ¶¶ 8-9.  She further explains that in 2011/2012, Skoorka's office was located in Willis Hall.  *Id.* ¶ 8.  At that time, Mahon observed that Skoorka had three computers and a keyboard in his office.  Mahon further explains that when Skoorka's office was subsequently relocated to Hutchinson Hall, Skoorka did not, in spite of Ms. Mahon's request that he "pack up his office," assist in the move.  *Id.*  All of Skoorka's computer equipment was accordingly packed into a box by movers, and was eventually moved into Skoorka's new office in Hutchison Hall, where it sat unopened until at least 2017.  *Id.* ¶¶ 8-9.

The Kean Defendants have also now provided a May 2, 2022 certification from William Kempey, the former chair of Kean's Economics Department from 1990 through 2008.  D.E. 273-3 ¶ 1.  Kempey notes "that office and teaching supplies for the Economics Department were kept in a locked room to prevent theft."  *Id.* ¶ 4.  He confirms that Ms. Mahon "had the key to the room," and that "Faculty would request supplies from her."  *Id.*  Kempey also attests to facilitating the delivery of a new computer to Skoorka's office in Willis Hall.  *Id.* ¶ 6.  Kempey similarly notes that the box containing that new computer sat unopened in Skoorka's office for as long as he can

15

recall.  *Id.*  Skoorka fails to point to any credible evidence in the record which rebuts the information attested to by Mahon and Kempey in their respective certifications.

Finally, Skoorka, during his August 30, 2021 deposition, testified that Kean set up a new computer in his office that was "sufficient" in Spring 2015.  D.E. 273-7 at 18, 25.

The Court, based on consideration of these additional proofs, concludes that summary judgment on the "deprivation of office supplies" portion of Skoorka's Title VII retaliation claim is appropriate.  To be clear, Skoorka broadly alleges that he was denied access to basic office supplies.  With respect to Skoorka's claims regarding the denial of access to computer equipment, specifically, the record now makes it abundantly clear that Skoorka did have access to computer equipment, and that he simply opted not to utilize it.  Skoorka's claim that he was denied access to computer equipment is baseless, and it accordingly cannot support a *prima facie* claim of Title VII retaliation.

With respect to Skoorka's claims that he was denied other office supplies, Skoorka fails to provide any specific details about the dates he was deprived of those supplies, the particular supplies he was deprived of, or the individuals who actually deprived him of those supplies. *During v. City Univ. of New York*, No. 01 CIV. 9584(BSJ), 2005 WL 2276875, at *13 (S.D.N.Y. Sept. 19, 2005) (entering summary judgment on plaintiff's Title VII claim because "allegations regarding inferior supplies do not [constitute] an adverse employment action" and plaintiff, moreover, "offer[ed] no concrete particulars" regarding the times, places, and particular people who allegedly gave him those inferior supplies).  There is also nothing in the record which credibly ties the denial of said office supplies to Skoorka's engagement in a protected activity.  These broad allegations, even if true, therefore fail to support a *prima facie* Title VII claim because Skoorka has failed to link the denial of these supplies to a retaliatory animus.  *Fennell*, 2022 WL 4296690,

16

at *24 (E.D. Pa. Sept. 16, 2022) (granting summary judgment on Title VII retaliation claim where "[t]here is no evidence as to even the specific time period in which [the allegedly retaliatory act took place], aside from it being post filing of the Internal Complaint, or whether [the alleged retaliator] was even aware of Fennell's complaint at the time of the [retaliatory action].")

Second, the Kean Defendants – via Mahon's certification – have shown that any denials of office supplies to Skoorka were due to the simple fact that those supplies were then available. Thus, even if it were true, that Skoorka was – as he claims – the only Kean professor to whom office supplies were denied, the Kean Defendants have now proffered a legitimate non-retaliatory reason supporting that denial. Skoorka has not rebutted this explanation by "demonstrat[ing] weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions from which a reasonable juror could conclude that the Defendants' explanation is unworthy of credence, and hence infer that the employer did not act for the asserted nonretaliatory reasons." *Carvalho-Grevious*, 851 F.3d at 262. For these reasons, the Court will grant summary judgment on the "denial of office supplies and computer equipment" portion of Skoorka's Title VII retaliation claim.

### D. Kempey's Visits to Skoorka's Classroom

Skoorka claims that Kean's former faculty chair, William Kempey, made disruptive visits to Skoorka's classroom. Judge McNulty found that this claim supported a *prima facie* Title VII retaliation claim. He made the following limited observations in support of that finding:

> Skoorka testified that defendant Kempey has interrupted Skoorka's classes and yelled at him in front of students [on several occasions between 2002 and 2008] . . . . Skoorka has testified to the volume, but not the content, of Kempey's statements, leaving open the possibility that the parties were arguing about something wholly unrelated. But given the other acts, and the history of complaints and litigation, I find that a fact finder could connect the alleged tirades to retaliation.

17

D.E. 130 at 35.

Kempey's May 2, 2022 certification provides more context about his visits to Skoorka's classroom. Kempey explains that one of his responsibilities as chair of Kean's Economics Department was to evaluate faculty members of the Economics Department, including Skoorka. D.E. 273-3 ¶ 2. He evaluated Skoorka's teaching by attending his classes. *Id.* Kempey further notes that when he observed faculty members, it was his general practice to sit in the back of the classroom and take notes, without otherwise participating in class. *Id.* ¶ 3. Kempey expressly denies ever yelling or screaming at Skoorka during any of his classroom visits. *Id.*

Skoorka, for his part, has never provided any information about the precise dates on which Kempey visited his classroom and/or yelled at him in front of students. *See* D.E. 295-2 ("Pl.'s SOMF") ¶ 4. Instead, he broadly alleges that Kempey disrupted his classes "routinely" and "several times per semester." *Id.*

The Court finds that entry of summary judgment on this portion of Skoorka's Title VII claim is appropriate. That Kempey, in his role as department chair, visited Skoorka's classroom cannot, in and of itself, be considered to be an adverse retaliatory action. With respect to Skoorka's claim that Kempey yelled at and/or humiliated him in front of students, the Court notes that this allegation is substantiated only by Skoorka's February 4, 2014 deposition testimony. *Id.* ¶ 9. Skoorka did not then, and has never, provided any precise dates specifying when these alleged incidents occurred. Skoorka has accordingly failed to establish temporal proximity, or any other meaningful connection, between Skoorka's engagement in protected activities and Kempey's purportedly disruptive visits. Skoorka has, in other words, failed to credibly link Kempey's disruptive visits to a retaliatory animus. *Fennell*, 2022 WL 4296690, at *24 (E.D. Pa. Sept. 16,

2022). This Court must therefore respectfully disagree with Judge McNulty that a factfinder could connect Kempey's "alleged tirades to retaliation."

Skoorka has likewise failed to present any evidence that speaks to the content of Kempey's statements during his allegedly disruptive visits. And Skoorka's broad claim that he was yelled at and humiliated in front of his students by Kempey, without more, fails to credibly demonstrate that Kempey's interactions with him, even if true, represent anything other than the "normally petty slights, minor annoyances, and simple lack of good manners" that fail to support a *prima facie* retaliation claim under Title VII. *Burlington*, 548 U.S. at 68; *Martinez v. N.Y.C. Dep't of Educ.*, No. 04-CIV-2728 (LTS)(DFE), 2008 WL 2220638, at *12 (S.D.N.Y. May 27, 2008) ("[I]ncidents where [supervisor] publicly yelled at [plaintiff] for various reasons or called him 'shit' . . . constitute, as a matter of law, the sorts of petty slights and personality conflicts that are not actionable."); *Rester v. Stephens Media*, LLC, 739 F.3d 1127 (8th Cir. 2014) (supervisor screaming and cursing at employee was not a materially adverse employment action for purposes of establishing a *prima facie* Title VII retaliation claim); *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 969 (8th Cir. 1999) ("ostracism and disrespect by supervisors [does] not rise to the level of an adverse employment action."). For these reasons, the Court will grant summary judgment on the "classroom visits" portion of Skoorka's Title VII claim.

## IV. CONCLUSION

For the foregoing reasons, the Kean Defendants' motion for summary judgment is **GRANTED**. Skoorka's remaining Title VII claims are **DISMISSED WITH PREJUDICE** and this case is **CLOSED**. An appropriate Order accompanies this Opinion.

Dated**:** February 16, 2023

_____
Evelyn Padin, U.S.D.J.